UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:
ANN FROMAN,
                           Debtor.
---------------------------------------------------------------x
ANN FROMAN,

                         Appellant,

              -against-

JUDY FEIN,

                         Appellee.
---------------------------------------------------------------x

No. 16-CV-5322 (CS)
No. 16-CV-5324 (CS)
No. 16-CV-5898 (CS)

**OPINION AND ORDER**

Appearances:

Andrea B. Malin
Genova & Malin
Wappingers Falls, New York
*Counsel for Appellant*

Jil Mazer-Marino
Meyer, Suozzi, English & Klein, P.C.
Garden City, New York
*Counsel for Appellee*

Seibel, J.

       Before the Court are the appeals of Appellant Ann Froman (Doc. 1 (16-CV-5898); Doc. 1

(16-CV-5322); Doc. 1 (16-CV-5324)), from United States Bankruptcy Court Judge Cecelia G.

Morris's July 1, 2016 and July 14, 2016 orders i) converting Ms. Froman's case under Chapter

13 of the Bankruptcy Code to one under Chapter 7 pursuant to 11 U.S.C. § 1307, (Bankr. Doc.

70),[1] ii) granting the motion of Appellee Judy Fein for relief from the automatic stay pursuant to

---

[1] "Bankr. Doc." refers to documents filed in the United States Bankruptcy Court for the Southern District of New York under docket number 16-BK-35622.

11 U.S.C. § 362(d), (Bankr. Doc. 56), and iii) denying Ms. Froman's motion pursuant to 11 U.S.C. § 362(a), (k) for an order finding that Ms. Fein violated the automatic stay and awarding attorneys' fees, costs, damages, and sanctions, (Bankr. Doc. 57).

## I.   **Background**

Only the facts relevant to this appeal will be discussed.  In March 2011, Ms. Fein, individually and on behalf of the estate of Benjamin Fein, sued Ms. Froman in New York state court to recover "Survival," a sculpture that Ms. Froman allegedly removed without permission from Mr. Fein's premises in 2010.  (Fein Mem. 5322 Part II, at ER000068-75.)[2]  On May 17, 2012, to resolve the state court action, the parties entered into a settlement agreement that required Ms. Froman to pay Ms. Fein $115,000 and granted Ms. Fein a security interest in Survival.  (*Id.* Part II, at ER000084-89.)  Ms. Froman did not make the agreed-upon payment and on July 7, 2014, a money judgment was entered in favor of Ms. Fein and the estate of Benjamin Fein in the amount of $137,181.25.  (*Id.* Part V, at ER000293-94.)  After a period of delay, during which Ms. Froman twice failed to appear for a deposition, (*id.* Part V, at ER000317-22), and unsuccessfully sought a set-off of her debt to Ms. Fein, (*id.* Part VIII, at ER000683-85), the Office of the Dutchess County Sheriff (the "Sheriff's Office") seized Survival, and a sale of the sculpture was scheduled for December 12, 2015, (*id.* Part VIII, at ER000721).  At the sale Rodney Silvernail, to whom Ms. Froman sometimes refers as her husband, placed the winning bid of $180,000, but he ultimately defaulted on the purchase.  (*Id.* Part VIII, at ER000690, ER000692-93, ER000723-24.)[3]  On February 25, 2016, the state court issued to Ms. Froman, Mr.

---

[2] "Fein Mem. 5322" refers to the Brief for Appellee Judy Fein, (Doc. 22 (16-CV-5322)); "Part" refers to the corresponding Appendix Part attached to Fein Mem. 5322.

[3] This bid was apparently a sham because the debt to Ms. Fein could have been satisfied in full for less.  (*Id.* Part VIII, at ER000694, ER000787-93).

Silvernail, and the Sheriff's Office an order to show cause on May 6, 2016 why, among other things, an order should not issue directing the Sheriff's Office to schedule a new sale of the sculpture. (*Id.* Part IX, at ER000804-07.)

On April 5, 2016, Ms. Froman filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Southern District of New York. (Bankr. Doc. 1.) Ms. Froman's bankruptcy schedules indicate that she had over $18,000,000 in assets and approximately $800,000 in liabilities. (*See* Fein Mem. 5322 Part IX, at ER000811.) Her proposed Chapter 13 plan obligated her to pay the trustee $300 per month from May 1, 2016 through April 1, 2021, and to sell Survival, in order to satisfy her creditors. (*Id*. Part IX, at ER000859, ER000864.) On April 8, 2016, Ms. Froman demanded that the Sheriff's Office turn Survival over to her. (*Id.* Part XI, at ER001032-34.) From approximately April 11, 2016 to May 4, 2016, as discussed in more detail below, the parties agreed that Survival would remain in the possession of the Sheriff's Office while arrangements were made to safely transport, store and ultimately sell the sculpture. (*Id.* Parts XI, XII, at ER0001030-89.)

On May 5, 2016, after these negotiations broke down, Ms. Fein sent a letter to the Sheriff's Office stating that she did not consent to the removal of Survival from the Sheriff's Office and that she would be filing appropriate motion papers with the Bankruptcy Court. (*Id.* Part XII, at ER001094-95.) On May 6, 2016, Ms. Froman demanded that the Sheriff's Office release Survival to her. (*Id.* Part XII, at 1099-1100.) That same day, Ms. Fein filed in the Bankruptcy Court a motion for i) relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), ii) adequate protection, pursuant to 11 U.S.C. § 363(e), or iii) dismissal of Ms. Froman's Chapter 13 case for cause, pursuant to 11 U.S.C. § 1307. (Bankr. Doc. 15.) Ms. Fein requested a hearing on her motion on shortened notice and a temporary restraining order prohibiting Ms. Froman

from moving Survival pending the Bankruptcy Court's ruling on her motion.  (*Id.* ¶ 5.)  On May 9, 2016, the Bankruptcy Court granted Ms. Fein's request for a hearing on shortened notice and enjoined Ms. Froman and her representatives and agents from removing Survival from the Sheriff's Office pending the decision on the motion.  (Bankr. Doc. 21.)  That same day – presumably before the Bankruptcy Court injunction came to Ms. Froman's attention – Mr. Silvernail retrieved Survival from the Sheriff's Office.  (Fein Mem. 5322 Part XII, at ER001113.)

On May 17, 2016, the Bankruptcy Court held a preliminary hearing on Ms. Fein's motion, at which time Ms. Froman agreed to retain a broker and sell Survival by September 30, 2016.  (*See* Bankr. Doc. 81 at 33:11-17.)  The Bankruptcy Court adjourned the hearing on Ms. Fein's motion to allow Ms. Froman to begin to carry out the agreed-upon sale of Survival.  (*Id.* at 32:13-33:12.)  On May 24, 2016, Ms. Froman moved for an order finding that Ms. Fein had violated the automatic stay and awarding attorneys' fees, costs, damages, and sanctions pursuant to 11 U.S.C. § 362(a), (k).  (Bankr. Doc. 36.)

On June 28, 2016, the parties reconvened before the Bankruptcy Court to continue the hearing on Ms. Fein's motion and to address Ms. Froman's motion.  (Bankr. Doc. 68.)  The Bankruptcy Court analyzed the factors commonly regarded as indicative of bad faith warranting conversion or dismissal under 11 U.S.C. § 1307, (*see id.* at 9:17-11:10), and found that Ms. Froman had filed her case in bad faith, (*see id.* at 10:6-7; 14:3-5).  Judge Morris therefore announced that she would convert the case to one under Chapter 7, (*see id.* at 12:10), lift the stay, (*see id.* at 14:7), and deny Ms. Froman's application for sanctions for the alleged stay violation, (*see id.* at 14:8, 16:11-13).

On July 1, 2016, the Bankruptcy Court entered its order granting Ms. Fein's motion for relief from the automatic stay because Ms. Froman had filed her petition in bad faith and allowing Ms. Fein to enforce her rights and remedies in and to Survival.  (Bankr. Doc. 56.)  That same day, the Bankruptcy Court entered its order denying Ms. Froman's motion brought under 11 U.S.C. § 362 for an order finding that Ms. Fein had violated the automatic stay and awarding attorneys' fees, costs, damages, and sanctions.  (Bankr. Doc. 57.)  On July 5, 2016, Ms. Froman appealed both of these decisions.  (Doc. 1 (16-CV-5322); Doc. 1 (16-CV-5324).)  On July 14, 2016, the Bankruptcy Court entered its order converting Ms. Froman's case from one under Chapter 13 of the Bankruptcy Code to one under Chapter 7 pursuant to 11 U.S.C. § 1307, (Bankr. Doc. 70), an order that Ms. Froman appealed on July 22, 2016, (Doc. 1 (16-CV-5898)).

## II.     Jurisdiction and Standard of Review

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court.  "On appeal, the [district] court 'may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'"  *W. Milford Shopping Plaza, LLC v. The Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, No. 14-CV-4170, 2015 WL 6395967, at *2 (S.D.N.Y. Oct. 21, 2015) (quoting former Fed. R. Bankr. P. 8013).[4]  A district court reviews a bankruptcy court's findings of fact for clear error and reviews its legal conclusions *de novo*.  *See Overbaugh v. Household Bank N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009) (*per curiam*).  "Mixed questions of fact and law are subject to *de novo* review."  *Babitt v. Vebeliunas (In re*

---

[4] As Judge Roman explained in *In re Great Atlantic & Pacific Tea Co.*, although the Federal Rules of Bankruptcy Procedure were amended in 2014 and no longer include the language quoted above, "logic still compels the same conclusion with respect to the appellate powers of the District Court."  *Id.* at *2 n.1.

*Vebeliunas*), 332 F.3d 85, 90 (2d Cir. 2003); *see Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*
*(In re Parmalat)*, 639 F.3d 572, 580 (2d Cir. 2011).

**III.**   **Discussion**

     A.   Conversion of the Case to Chapter 7

        1. *Legal Standard*

11 U.S.C. § 1307(c) "enumerates 11 specific occurrences which constitute sufficient
cause for the dismissal or conversion of a chapter 13 case to chapter 7.  The grounds enumerated
in subsections 1307(c)(1) through (11) are not exhaustive."  8 Alan N. Resnick & Henry J.
Sommer, Collier on Bankruptcy ¶ 1307.04 (16th ed. 2016).  "Although bad faith is not expressly
enumerated in the statute, it is well established that lack of good faith may also be cause for
conversion or dismissal under § 1307(c)."  *In re Prisco*, No. 11-CV-474, 2012 WL 4364311, at
*4 (N.D.N.Y. Sept. 24, 2012) (alteration and internal quotation marks omitted), *aff'd*, 574 F.
App'x 19 (2d Cir. 2014).  Bad faith may be found where at the time of filing, there is "no
reasonable probability of emerging from bankruptcy" or successfully reorganizing, *In re C-TC*
*9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997), or "where there is evidence of an intent to
delay or frustrate the efforts of secured creditors to enforce their legitimate rights," *In re*
*Northtown Realty Co., L.P.*, 215 B.R. 906, 914 (Bankr. E.D.N.Y. 1998); *see In re RCM Glob.*
*Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 522 (Bankr. S.D.N.Y. 1996) (bad
faith inquiry "is meant to insure that the Debtor actually intends to use chapter 11 to reorganize
and rehabilitate itself and not simply to cause hardship or delay to its creditors by invoking the
automatic stay").  In determining whether a petition was filed in bad faith, a bankruptcy court
"must review the totality of the circumstances," *In re Eatman*, 182 B.R. 386, 392 (Bankr.
S.D.N.Y. 1995), including the following factors:

(1) whether the debtor has few or no unsecured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's conduct pre-petition was proper; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether the debtor's income is sufficient such that there is a likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute, and (9) whether the debtor filed solely to obtain the protection of the automatic stay.

*In re Cornelius*, 195 B.R. 831, 836 (Bankr. N.D.N.Y. 1995); *see Campora v. HSBC Bank USA, N.A. (In re Campora)*, No. 14-CV-5066, 2015 WL 5178823, at *11 n.10 (E.D.N.Y. Sept. 3, 2015) (listing similar factors). "[A]n order converting a bankruptcy case for cause is reviewed for an abuse of discretion." *Blaise v. Wolinsky (In re Blaise)*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998).

        2. *Discussion*

Ms. Froman appeals the conversion of her case on the basis that the Bankruptcy Court i) failed to apply the totality of the circumstances test, ii) did not provide the parties with notice that it was considering converting the case, and iii) did not conduct an evidentiary hearing on the motion. (*See, e.g.*, App. Mem. 5898 at 14.)[5]

        a. <u>Totality of the Circumstances</u>

In ruling on whether there was cause to dismiss or convert Ms. Froman's case, the Bankruptcy Court acknowledged that it was required to "examine the totality of the circumstances," and analyzed the relevant factors that may indicate a bad faith filing. (Bankr. Doc. 68 at 9:4-11:10.) The Bankruptcy Court concluded that Ms. Froman filed her case in bad faith because: i) she had only two unsecured creditors, ii) her pre-petition conduct was

---

[5] "App. Mem. 5898" refers to the Brief for Appellant Ann Froman, (Doc. 6 (16-CV-5898)).

improper,[6] iii) the petition permitted her to evade the New York state court order that the Sheriff's Office sell Survival, iv) she filed for bankruptcy a few weeks before the sale of Survival and the day before a scheduled foreclosure on her mortgage, v) her Chapter 13 plan proposed payments of only $300 per month for a total of $18,000, even though she was approximately $232,000 in arrears on her mortgage and Ms. Fein's claim alone was for $166,000, vi) she listed only $807,861.03 in liabilities while claiming $18.9 million in assets, vii) the sculpture appeared to be one of her major assets, viii) the reorganization was essentially a two party dispute, and ix) she appeared to have filed solely to obtain the protection of the automatic stay.  (*See* Bankr. Doc. 68 at 10:6-11:10.)

Without citing to any authority, Ms. Froman suggests that it was improper for the Bankruptcy Court to find bad faith based on the fact that she filed for bankruptcy shortly before the scheduled foreclosure on her mortgage because "it is common knowledge that Chapter 13 [c]ases filed in the Southern District of New York are more often than not . . . filed for the sole purpose of dealing with secured creditors."  (App. Mem. 5898 at 15.)  She further argues "[o]ften

---

[6] At the Sheriff's Office sale of Survival on December 12, 2015, (Fein Mem. 5322 Part VIII, at ER000721), Mr. Silvernail placed the winning bid of $180,000 and ultimately defaulted on the purchase, (*id.* Part VIII, at ER000692-93, ER000724).  As noted above, this bid was apparently a sham because the debt to Ms. Fein could have been satisfied in full for less than the amount that Mr. Silvernail bid.  (*Id.* Part VIII, at ER000694, ER000787-93).  In addition, prior to filing her bankruptcy petition, Ms. Froman failed to appear for a deposition on two occasions.  (*See* Bankr. Doc. 15 ¶¶ 12, 17.)  When she did finally appear for a deposition on January 19, 2015, Ms. Froman may have lied under oath about the location and condition of Survival.  (*See, e.g.*, Fein Mem. 5322 Part VII, at ER000535, ER000541-42, ER000553-54, ER000559.)  Specifically, Ms. Froman testified that the sculpture had been at Argos Foundry and was later moved to her barn/studio where, at the time of the deposition, it was cut up into more than one piece so that a mold of it could be made.  (*Id.* Part VII, at ER000541-42, ER000553-54, ER000559, ER000624-29.)  Ms. Fein's then attorney had previously inquired of Steven Roy, owner of Argos Foundry, who disavowed any involvement with Survival.  (Bankr. Doc. 16 Ex. F ¶¶ 9, 12.)  When Mr. Roy was deposed on January 21, 2015, he testified that twenty-five years ago he cast the sculpture and that he heard that Ms. Froman was interested in making a mold of it but that that never materialized, and that he never had the statue in storage as Ms. Froman had represented.  (*Id.* Ex. J, at 6:12-24, 7:22-24, 10:12-16, 11:19-24, 13:12-16, 16:14-20.)  Further, Ms. Fein's counsel represented that when the sculpture was delivered to the Sheriff's Office, it was in one piece.  (Bankr. Doc. 15 ¶ 23.)  Ms. Froman also submitted in her bankruptcy schedules that Survival was worth $1,225,000, (*see* Fein Mem. 5322 Part IX, at ER000822), and later filed a pleading with the Bankruptcy Court representing the sculpture was worth the vastly different amount of $20,000, (*see* Bankr. Doc. 54 ¶ 8).

times, a debtor will file a 'Chapter 20 [c]ase' (to wit:  the filing of a Chapter 13 on the he[e]ls of receiving a Chapter 7 [d]ischarge) for the sole purpose of engaging in Loss Mitigation on the First Mortgage and Voiding the Lien on a Second Mortgage or other personal or real property." (*Id.* at 15-16.)  This is not a so-called Chapter 20 case, and the cases on which Ms. Froman relies in support of her argument related to the Bankruptcy Court's consideration of the timing of the filing are therefore inapposite.  Bankruptcy courts may consider filing a petition on the eve of a foreclosure as a possible indication of bad faith.  *See, e.g.*, *In re Syndicom Corp.*, 268 B.R. 26, 47-48 (Bankr. S.D.N.Y. 2001) ("[T]he filing of a bankruptcy petition on the eve of a foreclosure . . . is only one of several indicia that a court may appropriately look to in determining whether, under the totality of the circumstances, resort to the Bankruptcy Code has been in good faith, on the one hand, or inappropriate, on the other."), and the record demonstrates that the Bankruptcy Court put no greater emphasis on this factor than any others, (*see* Bankr. Doc. 68 at 10:6-11:10). Indeed, the Bankruptcy Court seemed at least as concerned, if not more, that the petition allowed Ms. Froman to evade the state court order regarding the sale of Survival, which was to be taken up a few weeks after the bankruptcy filing.  (*See id.* at 10:12-16.)  In any event, the Bankruptcy Judge's order was based on far more than the fairly commonplace occurrence of an eve-of-foreclosure filing.

Ms. Froman unpersuasively argues that the Bankruptcy Court erred in concluding that she had only two unsecured creditors.  (*See* App. Mem. 5898 at 14-15.)  Schedule D titled "Creditors Who Have Claims Secured by Property" lists Ms. Fein as a creditor with a claim for $137,181.25.  (Fein Mem. 5322 Part IX, at ER000822.)  Schedule E/F titled "Creditors Who Have Unsecured Claims" lists only two entities:  American Express and Stenger, Roberts, David, *et al.*  (*Id.* Part IX, at ER000824-25.)  That Ms. Fein's claim might later have become unsecured

in part, if Survival turned out to be worth well less than what Ms. Froman represented, does not change this fact.  Therefore, the Bankruptcy Court did not err in relying on the face of Ms. Froman's bankruptcy schedules and concluding that she had two unsecured creditors.  Ms. Froman cannot complain that the Bankruptcy Judge accepted Ms. Froman's own representations in her bankruptcy petition, *In re Edwards*, No. 03-10018, 2003 WL 22016324, at *8 (Bankr. D. Vt. Aug. 26, 2002) ("The integrity and effectiveness of the bankruptcy process is founded upon the premise that debtors file complete and accurate schedules, upon which the Court, trustees and creditors can rely."), especially when the bad-faith inquiry goes to the debtor's state of mind at the time of filing, *see In re RCM*, 200 B.R. at 522 ("[T]he inquiry into the Debtor's intent (or lack of intent) is to be analyzed as of the time of the filing of the petition . . . .").

Ms. Froman also contends that the Bankruptcy Court had no basis for finding that Survival is one of her major assets.  (App. Mem. 5898 at 16-17.)  The Bankruptcy Court did not have an appraisal of the sculpture but noted that Ms. Fein valued Survival at $20,000 and Ms. Froman valued it at approximately $1,200,000.  (Bankr. Doc. 68 at 13:7-15.)  While the precise value of Survival is not known, it was not clearly erroneous for Judge Morris to conclude it was one of Ms. Froman's major assets in light of the fact that Ms. Froman indicated in Schedule D that it had a value of over one million dollars – a significant portion of her claimed almost $19 million in assets – and that it was the collateral securing Ms. Fein's six-figure claim.  (*See* Fein Mem. 5322 Part IX, at ER000811, ER000822.)  Again, Ms. Froman cannot be heard to complain that the Bankruptcy Judge assumed Ms. Froman had been truthful in her schedules.

In these circumstances – including a debtor who had for years been trying every which way to shield the sculpture from her creditor; a last-ditch filing; only two unsecured creditors; assets greatly exceeding liabilities; and proposed payments that would not come close to paying

off the debts – the Bankruptcy Court was more than justified in concluding that Ms. Froman had no real intention of fulfilling her obligations to her creditors pursuant to the proposed plan but had filed just to gain the benefit of the automatic stay.

Ms. Froman argues that the Bankruptcy Court should not have relied on her schedules to conclude that she had no real intention of reorganizing herself, claiming that it was clear that she intended to sell all of her artwork to repay her debts.  That alleged intent was nowhere indicated in the petition she filed[7] and, as discussed, the determination of good or bad faith is made as of the filing date.  Putting that aside, Ms. Froman claims she made her intention to sell the artwork clear at the May 17, 2016 hearing, (App. Mem. 5898 at 2-3), but the transcript of that hearing contains no such representation, (Bankr. Doc. 81).[8]  To the extent she relies on her application for approval to retain a broker, (Bankr. Doc. 40), that document states that Ms. Froman had retained a broker and believed it necessary to have him "[r]epresent[] . . . the debtor in advising, promoting, marketing and selling of her artwork, including the 'Survival' piece," (Bankr. Doc. 40 at 3).  This hardly amounts to a clear statement that Ms. Froman was proposing to sell all her artwork and use the proceeds to pay her creditors in full.

Judge Morris committed no error in crediting Ms. Froman's schedules in assessing her intent at the time of filing, and nothing that happened thereafter undermined the conclusions that the Bankruptcy Judge reached.  It simply cannot be said on this record that the Bankruptcy

---

[7] Ms. Froman's argument that she could not have made her intentions clear because she had to use a form petition is specious.  She managed to include a footnote about her plan to sell Survival, (*id.* Part IX, at ER000864), and could easily have done the same with respect to her other artwork.

[8] Ms. Froman's counsel did not pinpoint a page in the transcript where this representation was allegedly made, forcing the Court to read the whole thing.  Likewise, in her memoranda of law she consistently cited to cases without providing a pin cite, again forcing the Court to read the whole case in search of the cited proposition.  Ms. Malin is hereby ordered, in any future cases she has before this Court, to include specific page numbers when citing to transcripts, cases, court documents or the like.

Court's consideration of the bad faith issue was cursory or mechanical.  Judge Morris considered the relevant factors under the correct standard, and did not abuse her discretion.

            b.   Notice

Ms. Froman further asserts that the Bankruptcy Court failed to "provide to the parties notice that [it] was considering the entry of an Order Converting the Case."  (App. Mem. 5898 at 14.)  Under 11 U.S.C. § 1307(c) a bankruptcy court *may* convert *or* dismiss a case after notice and a hearing, and Ms. Froman does not deny that she had notice of the hearing at which the Bankruptcy Court was to consider Ms. Fein's motion under that section.  "Use of the word 'may' indicates that the decision to dismiss or convert is committed to the discretion of the bankruptcy court."  *In re Blaise*, 219 B.R. at 949-50.  On June 28, 2016, before deciding to convert the case, Judge Morris correctly noted that "[i]n deciding between conversion and dismissal, a [bankruptcy c]ourt must consider the best interest of the creditors and the estate."  (Bankr. Doc. 68 at 12:8-10); *see In re Blaise*, 219 B.R. at 950.  Given the motion that was filed on May 6, 2016 seeking dismissal, the plain language of 11 U.S.C. § 1307 allowing dismissal or conversion, Judge Morris's comments at the hearing on June 28, 2016, and the fact that the same standards apply to find cause to dismiss or convert a bankruptcy case, Ms. Froman could not have been surprised when the Bankruptcy Court on June 28, 2016 found appropriate the arguably less drastic step of converting, rather than dismissing her case, and ordered the same on July 14, 2016.

            c.   Evidentiary Hearing

Ms. Froman further argues that the Bankruptcy Court erred in failing to conduct an evidentiary hearing before converting her case to one under Chapter 7.  (App. Mem. 5898 at 23-24.)  A bankruptcy court need only provide notice and opportunity for a hearing "as is

appropriate in the particular circumstances." *In re Blaise*, 219 B.R. at 949.  The lack of an evidentiary hearing does not constitute grounds for error where, as here, a party had the opportunity to contest a conversion motion but never requested a separate evidentiary hearing. *See Bernheim v. Damon & Morey, LLP*, No. 06-BK-3386, 2007 WL 1858292, at *2 (2d Cir. June 28, 2007) (summary order) (because "[b]ankruptcy judges enjoy broad discretion as to the type of hearing to conduct," court did not abuse discretion by failing to conduct evidentiary hearing where debtor had "more than ample opportunity to present its arguments to the [Bankruptcy] Court" through written submissions); *In re Blaise*, 219 B.R. at 949 ("Appellant had the opportunity to contest the Conversion Motion at the hearing . . . .  He submitted his own affidavit but such affidavit left essentially undisputed the Creditor's core allegations. Accordingly, an evidentiary hearing was not required."); *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 479 (S.D.N.Y. 2013) ("It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record . . . .  [W]here the parties do not request an evidentiary hearing or the core facts are not disputed, the bankruptcy court is authorized to determine contested matters on the pleadings and arguments of the parties, drawing necessary inferences from the record.") (alteration and internal quotation marks omitted); *Powers v. Am. Honda Fin. Corp.*, 216 B.R. 95, 97 (N.D.N.Y. 1997) (evidentiary hearing not required where party did not request one, and where party had opportunity to contest at oral argument).

When Judge Morris asked Ms. Froman if she had anything to add before the rulings on the motions on June 28, 2016, Ms. Froman stated that she had "put in [her] papers," indicating that she would rest on her written submissions.  (Bankr. Doc. 68 at 8:8-13.)  "[A]t no time did [Ms. Froman] even request an evidentiary hearing.  [Sh]e cannot, therefore, now be heard to

13

complain about the lack of an evidentiary hearing." *In re Blaise*, 219 B.R. at 949; *see also id.*

("[I]t is a well-established general rule that an appellate court will not consider an issue raised for

the first time on appeal.").[9]  Moreover, even now Ms. Froman does not suggest what factual

issues might have required resolution at an evidentiary hearing.  Accordingly, the Bankruptcy

Court did not abuse its discretion in converting Ms. Froman's case from one under Chapter 13 of

the Bankruptcy Code to one under Chapter 7 without conducting an evidentiary hearing.

IV.     Relief from the Automatic Stay

        1.  *Legal Standard*

        Under 11 U.S.C. § 362, the filing of a bankruptcy petition operates as a stay against,

among other things, "the . . . continuation . . . of a judicial . . . proceeding against the debtor that

was . . . commenced before the commencement of the [bankruptcy] case," "the enforcement,

against the debtor or against property of the estate, of a judgment obtained before the

commencement of a [bankruptcy] case," and "any act to obtain possession of property of the

estate or of property from the estate or to exercise control over property of the estate."  The

automatic stay provides a debtor with breathing room from the claims of its creditors, and

"'allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate

in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by

uncoordinated proceedings in other arenas.'"  *Tenas-Reynard v. Palermo Taxi Inc.*, No. 14-CV-

6974, 2016 WL 1276451, at *3 (S.D.N.Y. Mar. 30, 2016) (quoting *In re Ionosphere Clubs, Inc.*,

922 F.2d 984, 989 (2d Cir. 1990)).  "The scope of the automatic stay is broad and is a

---

[9] In her reply papers Ms. Froman misleadingly suggests that she sought an evidentiary hearing that was denied. (Doc. 8 (16-CV-5898) at 1-2.)  While her counsel did, at the May 17, 2016 hearing, say, "Well, I think we need an evidentiary hearing on it," (Bankr. Doc. 81 at 17:14-15), that comment related to the terms of the insurance coverage for Survival, a matter on which the parties subsequently reached an agreement, (*id.* at 32-34), and on which the Bankruptcy Judge never ruled.  Thereafter, at the June 28, 2016 hearing, Ms. Froman's counsel rested on her papers. (Bankr. Doc. 68 at 8:8-13.)

fundamental debtor protection that not only protects debtors but protects creditors as well." *In re Great Atl. & Pac. Tea Co.*, 467 B.R. at 51 (internal quotation marks omitted).

A bankruptcy court has the discretion under 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay "for cause," by "terminating, annulling, modifying, or conditioning" the stay. 11 U.S.C. § 362(d)(1). The movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protections of the automatic stay. *See Barber v. Arnott (In re Arnott)*, 512 B.R. 744, 753 (Bankr. S.D.N.Y. 2014). "Neither Section 362(d)(1) nor the legislative history defines 'cause.' 'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis." *In re Project Orange Assocs., LLC*, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (citations and internal quotation marks omitted). A bankruptcy court can grant relief from the automatic stay for cause under 11 U.S.C. § 362(d) if the debtor files a petition in bad faith. *See In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001) ("[E]ach of Code sections . . . 1307(c) and 362(d)(1) states that the authority it provides – dismissal or relief from stay, respectively – may be granted for 'cause[.]' . . . Cause, for either dismissal or relief from the stay, may be found based on unenumerated factors, including 'bad faith.'"). "The same test for bad faith applies under both [11 U.S.C. § 362(d)(1) and § 1307(c)]." *In re Eatman*, 182 B.R. at 392. A bankruptcy court's determination on a motion to lift an automatic stay is reviewed for an abuse of discretion. *Case v. United States (In re Case)*, 384 F. App'x 43, 44 (2d Cir. 2010) (summary order).

2. *Discussion*

Ms. Froman appeals the order granting Ms. Fein relief from the automatic stay on the basis that the Bankruptcy Court abused its discretion by failing to properly apply the totality of

the circumstances test and by not holding an evidentiary hearing.  (*See, e.g.*, App. Mem. 5322 at 19.)[10]

The Bankruptcy Court noted that lifting a stay "is an extraordinary remedy that requires careful examination of facts on a case-by-case basis."  (*See* Bankr. Doc. 68 at 13:16-23.)  Having "determined that there [wa]s cause to dismiss for bad faith or cause to convert for bad faith," it went on to find that "for th[e] same reason[s], there[ was] cause to lift the stay for bad faith."  (*Id.* at 14:3-7.)  The Bankruptcy Court thoroughly evaluated the totality of the circumstances in determining that there was cause based on bad faith to lift the stay.  (*Id.* at 9:17-11:10.)  The Bankruptcy Court's decision "should not be disturbed on appeal [because] the record shows that [Judge Morris] considered the appropriate factors for determining whether cause for relief from the stay exists."  *In re Great Atl. & Pac. Tea Co.*, 467 B.R. at 55 (internal quotation marks omitted).  Therefore, for the reasons discussed above with respect to the decision to convert the case, it was not an abuse of discretion for the Bankruptcy Court to find cause to lift the stay based on bad faith.

Ms. Froman argues she was entitled to an evidentiary hearing on Ms. Fein's motion for relief from the stay.  (App. Mem. 5322 at 26-27.)

> Section 362(d) . . . does not require the bankruptcy court to hold a hearing in every case in which a creditor seeks relief from the automatic stay.  The words 'after notice and a hearing' in that section have a meaning different from the command derived from the phrase 'the court shall hold a hearing,' which appears elsewhere in the Bankruptcy Code.

*In re River Hills Apartments Fund*, 813 F.2d 702, 706 (5th Cir. 1987); *see In re 347 Linden LLC*, No. 11-CV-1990, 2011 WL 2971496, at *7 (E.D.N.Y. July 20, 2011) ("Although 11 U.S.C. § 362(d) refers to the bankruptcy court's authority to dismiss a petition upon 'notice and

---

[10] "App. Mem. 5322" refers to the Brief for Appellant Ann Froman, (Doc. 14 (16-CV-5322)).

hearing,' the extent of the 'hearing' required in a particular case is committed to the sound discretion of the bankruptcy judge.").  Again, Ms. Froman did not request an evidentiary hearing on the motion for relief from the stay and relied on her written submissions rather than raising any additional points with the Bankruptcy Court when given the opportunity to do so.  Therefore, Ms. Froman had adequate opportunity to be heard in opposition to the motion for relief from the stay under 11 U.S.C. § 362(d).  *See Bernheim*, 2007 WL 1858292, at *2; *In re Blaise*, 219 B.R. at 949; *In re AMR Corp.*, 490 B.R. at 479; *Powers*, 216 B.R. at 97.

Accordingly, the Bankruptcy Court did not abuse its discretion in granting Ms. Fein relief from the stay without conducting an evidentiary hearing.

V.   Violation of the Stay

1.  *Legal Standard*

"Where there are willful violations of the automatic stay provision, the Bankruptcy Code directs that actual damages be awarded to any individual injured by that violation."  *HSBC Bank USA v. Crawford (In re Crawford)*, 476 B.R. 83, 86 (S.D.N.Y. 2012) (citing 11 U.S.C. § 362(k)).  "[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages."  *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir. 1990).

> A willful violation of the stay does not require specific intent to violate the stay.  A party can be subject to liability under [§ 362(k)] if it engages in conduct which violates the automatic stay, with knowledge that a bankruptcy petition has been filed.  In determining whether a stay violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue.  Not even a good faith mistake of law or a legitimate dispute as to legal rights relieve a willful violator of the consequences of his act.

*In re Velichko*, 473 B.R. 64, 69-70 (Bankr. S.D.N.Y. 2012) (quoting *Sensenich v. Ledyard Nat'l Bank (In re Campbell)*, 398 B.R. 799, 812 (Bankr. D. Vt. 2008)).  "The decision of whether [Ms. Fein] violated 11 U.S.C. § 362 is a matter of law.  Thus, the relevant standard of review of

17

[whether Ms. Fein] violated the automatic stay is [] de novo."  *Bank of Am., N.A. v. Adomah (In re Adomah)*, 368 B.R. 134, 137 (S.D.N.Y. 2007).  "[T]he party seeking damages for a violation of the automatic stay bears the burden of proving that damages were actually incurred."  *In re Sturman*, No. 10-CV-6725, 2011 WL 4472412, at *3 (S.D.N.Y. Sept. 27, 2011); *see In re Clark*, No. 13-CV-10904, 2014 WL 793573, at *2 (Bankr. D. Vt. Feb. 26, 2014) ("The Debtor has the burden of proof in establishing facts to show a violation of the stay and a basis for an award of sanctions under § 362(k).").

2.  *Discussion*

Ms. Froman asserts that Ms. Fein violated the stay because "[o]nce the [bankruptcy] estate had been created by the commencement of the [bankruptcy] case, [Ms. Fein] had an affirmative duty, without condition, to turn[]over the Survival to [Ms. Froman] or otherwise be in willful violation of the stay set forth in 11 U.S.C. § 362(a)."  (App. Mem. 5324 at 8.)[11]  The Bankruptcy Court found that there was no violation of the stay because the parties had agreed that the sculpture would remain in the possession of the Sherriff's Office.  (Bankr. Doc. 68 at 14:16-16:13.)

A review of the correspondence between the parties reveals that there was an agreement that Survival would stay at the Sheriff's Office pending further agreement on how to transport, store, and sell the sculpture.  (*See* Fein Mem. 5322 Parts XI, XII, at ER001030-84.)  On April 11, 2016, the parties agreed that the statue would remain with the Sheriff's Office until April 15, 2016, (*id.* Part XI, at ER001030), and on April 15, 2016, that agreement was extended until April 21, 2016, (*id.* Part XI, at ER001050-52).  On April 20, 2016, the parties agreed that the sculpture

---

[11] "App. Mem. 5324" refers to the Brief for Appellant Ann Froman, (Doc. 5 (16-CV-5324)).

18

would stay put pending further agreement or a court order.  (*Id.* Part XI, at ER001064-65.)[12]  Ms. Froman's counsel acknowledged that agreement several times.  (*See, e.g.*, *id.* Part XII, at ER001078, ER001085.)  That Ms. Fein in exchange agreed to forbear from seeking court intervention is apparent not only from the context, but from the fact that Ms. Fein made an application to the Bankruptcy Court almost immediately upon learning that Ms. Froman was no longer intending to abide by the most recent agreement.  (Bankr. Doc. 15; Fein Mem. 5322 Part XII, at 1084-92; *see id.* Part XII, at ER001094-95 (letter to Sheriff's Office explaining that Ms. Fein "will be filing appropriate motion papers with the [B]ankruptcy [C]ourt" because Ms. Froman plans to "retrieve the [s]tatue notwithstanding that [the parties] have not reached an agreement and [Ms. Froman] has not obtained an order from the [B]ankruptcy [C]ourt").  Therefore, the Bankruptcy Court's factual determination that there was an agreement between the parties that Survival would remain at the Sheriff's Office was not erroneous.

Further, upon *de novo* review, I concur with Judge Morris's legal conclusion that the automatic stay had not been violated.  It is evident that the Sheriff's Office, not Ms. Fein, had possession and control over the sculpture and that Ms. Froman agreed to have it remain there.  (*See id.* Parts XI, XII, at ER001030-84.)  Further, once the negotiations between the parties broke down, and Ms. Froman demanded that the Sheriff's Office release the statue to her, (*id.* Part XII, at ER001099-ER001100), Mr. Silvernail retrieved it promptly, (*id.* Part XII, at ER001113).  Therefore, this case is distinguishable from those relied upon by Ms. Froman in

---

[12] Ms. Froman claims, without providing contemporaneous documentation, that the agreement was only that she would obtain sufficient insurance before moving Survival.  (Doc. 8 (16-CV-5324) at 1-2.)  In so doing she ignores the April 20, 2016 letter Ms. Fein's counsel sent the Sheriff's Office, on which Ms. Froman's counsel was copied, describing the agreement as set forth in the text.  (Fein Mem. 5322 Part XI, at ER001064-65.)  Ms. Froman did not object to or qualify that letter in any respect.  Rather, it was not until it became clear that Ms. Fein was dissatisfied with the insurance Ms. Froman had obtained and that no agreement would be forthcoming that Ms. Froman began to claim that the terms of the parties' agreement were other than those set forth in Ms. Fein's counsel's April 20, 2016 letter.  (*Id.* Part XII, at ER001085-ER001100.)

which creditors possessed the relevant property and refused to turn it over to the debtor until particular demands were met. *See, e.g.*, *Weber v. SEFCY (In re Weber)*, 719 F.3d 72, 73, 81 (2d Cir. 2013) (affirming district court holding that "by declining to surrender the vehicle absent a turnover order and protection [lender] considered adequate, the lender wrongfully 'exercised control' over the vehicle" and willfully violated the stay); *In re Velichko*, 473 B.R. at 69-70 (finding a violation of the stay where the creditor "withheld [debtor's] only means of transportation – causing her to incur more debt by forcing her to rent a car . . . . Then as a condition for her to receive possession of the car, which she was legally entitled to receive upon the filing of the petition, [creditor] extracted from her over $800 in arrears and a reaffirmation agreement."). None of the cases cited by Ms. Froman involved a situation like that here, where in exchange for the creditor forbearing from filing a motion for relief from the stay or adequate protection, the debtor agreed to maintain the status quo of the property remaining with a third party. *See Pardo v. Nylcare Health Plans, Inc. (In re APF Co.)*, 274 B.R. 408, 417 (Bankr. D. Del. 2001) ("The purpose of the automatic stay is to maintain the status quo that exists at the time of the debtor's bankruptcy filing. The sanctions of § 362(h) should not be extended to punish creditors who legally seized property of the estate pre-petition and fail to return this property immediately to the debtor post-petition. Absent any affirmative post-petition act regarding the property, these creditors are in effect complying with the spirit of the § 362 freeze by maintaining the seized property in the status it enjoyed pre-petition.") (citation and internal quotation marks omitted). Moreover, it is commonplace that parties agree to refrain from litigation while exploring a possible agreement in exchange for maintenance of the status quo. If such conduct became the basis for sanctions for a violation of the automatic stay, much

unnecessary motion practice, with concomitant unnecessary costs and burdens on the parties and the Bankruptcy Court, would result.

Ms. Froman's motion also fails because even if there were a violation, she does not specify any damages that she incurred apart from litigation costs expended in pursuing her motion. "While § 362(k) is designed to discourage willful violations of the automatic stay, it does not permit recovery of unnecessary litigation costs." *In re Ampal-Am. Israel Corp.*, 502 B.R. 361, 374 (Bankr. S.D.N.Y. 2013).

> Th[e] concern about the propriety of awarding fees in the absence of other actual damages is particularly compelling where, as here, the only fees and costs at issue were expended not in efforts to withdraw the offending judgment or motion or to halt the offending conduct, but in bringing a motion for damages under § 362.

*In re Sturman*, 2011 WL 4472412 at *4. Ms. Froman asserts that as a result of Ms. Fein's actions, Survival was "unlawfully held by the Sheriff's Department for a period of 23 days." (App. Mem. 5324 at 7.) She further claims that she was prevented "from showing the Survival to interested purchasers or art brokers or dealers for the purpose of marketing same for sale in an expeditious manner." (*Id.*) But she has provided no evidence of any buyer or broker who wished to see the sculpture during that period, let alone evidence that any such person was unable to do so at the Sheriff's Office. Any alleged damages are thus purely speculative and unquantifiable. Ms. Froman has not shown that she suffered any loss as a result of Ms. Fein's conduct and thus is not entitled to damages, fees or costs. *See In re Ampal-Am. Israel Corp.*, 502 B.R. at 374-75 (affirming bankruptcy court's decision to "decline to award attorneys' fees and costs incurred in connection with the prosecution of a willful stay violation where the only damages incurred by the injured party are the legal fees and costs incurred in bringing the motion"); *In re Sturman*, 2011 WL 4472412, at *3 ("Where no injury results from the violation of the automatic stay, an award of damages is clearly inappropriate.") (collecting cases).

Ms. Froman argues in a conclusory fashion that she should have been awarded punitive damages because of Ms. Fein's "willful and egregious violation of the automatic stay, pursuant to 11 U.S.C. § 362(k)." (App. Mem. 5324 at 22.) "Punitive damages . . . are only appropriate where the stay violation was conducted in bad faith, with malice, or in a particularly egregious manner." *In re Ebadi*, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011). "[E]ven callous disregard [of a stay] is an insufficient basis upon which to award punitive damages because it does not rise to the level of bad faith or maliciousness." *In re Adomah*, 368 B.R. at 139. There is nothing in the record indicating that Ms. Fein acted in bad faith, with malice, or in an egregious manner. Therefore, the Bankruptcy Court also properly declined to award punitive damages.

Ms. Froman again argues that she was entitled to an evidentiary hearing on her motion for an order finding that Ms. Fein violated the automatic stay and awarding attorneys' fees, costs, damages, and sanctions. (App. Mem. 5324 at 28-29.) For the same reasons outlined above with respect to the other motions, the Bankruptcy Court did not err in failing to conduct an evidentiary hearing. *See Bernheim*, 2007 WL 1858292, at *2; *In re Blaise*, 219 B.R. at 949; *In re AMR Corp.*, 490 B.R. at 479.

22

**VI.**   <u>**Conclusion**</u>

For the reasons set forth above, the orders of the United States Bankruptcy Court dated July 1, 2016 and July 14, 2016, (Bankr. Docs. 56, 57, 70), are hereby AFFIRMED.  The Clerk of Court is respectfully directed to docket this decision in and close all three pending appeals, (16-CV-5898, 16-CV-5322, and 16-CV-5324).

**SO ORDERED.**

Dated:  March 20, 2017
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

23